IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-178-D

| | | |
|---|---|---|
| WILLIAM WEBER, | ) | |
| 212 EAST OAK ST., LLC, ERAGON, LLC, | ) | |
| THE RED BARRON PROPERTIES, LLC, | ) | |
| and THE REAL ESTATE INVESTMENT | ) | |
| COMPANY, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SPECIALIZED LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

On March 16, 2020, William Weber (individually, "Weber") and his named real estate

investment company plaintiffs 212 East Oak St., LLC, Eragon, LLC, The Red Baron Properties,

LLC, and The Real Estate Investment Company, LLC (collectively, "plaintiffs"), filed a complaint

in Wake County Superior Court against Specialized Loan Servicing, LLC ("Specialized Loan" or

"defendant") alleging violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq.

("FCRA"), Telephone Consumer Protection Act, 47 U.S.C. §§ 227 et seq. ("TCPA"), North Carolina

Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1 et seq. ("UDTPA"), and North

Carolina Mortgage Debt Collection and Servicing Act, N.C. Gen. Stat. §§ 45-90 et seq. ("MDCSA"),

and alleging common law breach of contract [D.E. 1-1]. On April 28, 2020, defendant timely

removed the action to this court based on federal diversity jurisdiction under 28 U.S.C. § 1332 [D.E.

1]. On December 27, 2021, after close of discovery, defendant moved for summary judgment on all

claims [D.E. 55] and filed a memorandum, a statement of material facts, and exhibits in support

[D.E. 56, 61, 62–68]. On February 11, 2022, plaintiffs responded in opposition [D.E. 73] and filed

a statement of material facts and exhibits in support [D.E. 83, 84–88]. On March 25, 2022, defendants replied [D.E. 91]. As explained below, the court denies defendant's motion for summary judgment as to the TCPA claim and breach of contract claim and grants defendant's motion for summary judgment on all other claims.

I.

Weber is a real estate property developer with several real estate investment companies in North Carolina, including, but not limited to, the other named plaintiffs. See Compl. [D.E. 1.1] ¶ 12; Stmt. Mat. Facts ("SMF") [D.E. 61] ¶ 1; Resp. Stmt. Mat. Facts ("Resp. SMF") [D.E. 83] ¶ 1. Weber maintains his companies' finances and runs the companies' and his personal financial affairs through one Bank of America checking account. See [D.E. 66-5] 35; SMF at ¶¶ 15–16; Resp. SMF at ¶¶ 15–16.

Between November 30 and December 4, 2018, Weber entered into cash-out refinancing agreements with lender, Recovco, of ten loans obtained in the names of Weber's named company plaintiffs in order to purchase additional investment properties. See Compl. at ¶¶ 19, 21–23; SMF at ¶ 3; Resp. SMF at ¶ 3. As part of that agreement, Weber executed a Borrower Certification of Business Purpose Entity, which certified that the loans were for "commercial purposes and not consumer purposes, and that the loan proceeds are intended to be used and shall be used for commercial purposes only, not for personal, family or household purposes." [D.E. 64-2]; see SMF at ¶ 12; Resp. SMF at ¶ 12. Weber also listed his phone number on each loan application. See [D.E. 67-5] 2, 7, 12, 17, 22, 27, 31, 36, 41, 45. Weber, as an individual, was not a named borrower on any of these loans, but was a guarantor. See SMF at ¶ 14; Resp. SMF at ¶ 14. To determine eligibility for these loans, Recovco used Weber's personal credit history. See SMF at ¶ 48; Resp. SMF at ¶ 48.

2

In early 2019, Weber used the loan proceeds to purchase two investment properties. See Compl. at ¶ 21; SMF at ¶ 17; Resp. SMF at ¶ 17.

Shortly after entering into the loan agreements, Recovco transferred the loans to Specialized Loan. See Compl. at ¶ 22; SMF at ¶ 18; Resp. SMF at ¶ 18. As a result, Weber had to make timely and acceptable monthly payments to Specialized Loan. See Compl. at ¶ 23; SMF at ¶ 19; Resp. SMF at ¶ 19. Specialized Loan considered payments made after the fifteenth day of each month as late and past due. See Compl. at ¶ 25; SMF at ¶ 4; Resp. SMF at ¶ 4. Specialized Loan's monthly statements to Weber always included a coupon with payment submission instructions. According to Specialized Loan, the payor was to attach the coupon to the monthly payment with the check and account numbers written on the check, in the window envelope provided, when mailed to Specialized Loan. See [D.E. 65-1]; SMF at ¶ 19; Resp. SMF at ¶ 19.

From January to May 2019, Weber made payments to Specialized Loan for all ten of plaintiffs' loans through a certified lump-sum check. See Compl. at ¶ 27. Weber contends that each month he submitted a separate paper with account numbers in addition to his lump-sum check. Id. Specialized Loan never notified Weber that this payment method was proper or improper and continued to send payment submission instructions monthly. See SMF at ¶¶ 19–20, 23–24; Resp. SMF at ¶¶ 19–20, 23–24. Sometime between May 10 and May 15, 2019, Weber submitted the ten loan payments in a lump sum check without account numbers or any other information about plaintiffs' accounts except his name, William Weber. See [D.E. 66-1]; SMF at ¶¶ 23–24; Resp. SMF at ¶¶ 23–24.

On May 16, 2019, Weber contends that Specialized Loan rejected his payment and notified Weber via telephone that he failed to make payments for any accounts in May and that his payments

3

were past due. See Compl. at ¶ 31. Between May and July 2019, Specialized Loan called Weber several times, without the assistance of an automatic telephone dialing system, and left prerecorded voice messages. See SMF at ¶ 49; Resp. SMF at ¶ 49.

Starting June 2019, Weber submitted payments through electronic billing but did not resubmit the May 2019 payment in what Specialized Loan considered the proper form. See Compl. at ¶ 61; [D.E. 66-5]. After May 2019, Specialized Loan applied all payments through the electronic billing service for the prior month, thereby producing late fees. See Compl. at ¶ 82.

## II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378. A genuine issue of material fact exists if there is sufficient evidence

4

favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

## A.

Weber claims Specialized Loan failed to perform its duties as a furnisher of information under the FCRA and failed to comply with the FCRA. See Compl. at ¶¶ 117–21. The FCRA applies to "consumers" and "consumer reports." See 15 U.S.C. §§ 1681 et seq. Under the FCRA, a consumer is defined as "an individual." Id. at § 1681a(c). Section 1681 uses a different term, "person," to encompass individuals and companies, among other entities. See id. at § 1681a(b). The FCRA defines a consumer report as communications from a consumer reporting agency bearing on a consumer's credit for a consumer purpose. See id. at § 1681a(d). Consulting an individual's credit report alone does not establish that it is a consumer report. See, e.g., Cavaliere v. Burke, 50 F.3d 1033, 1995 WL 136229, at *3–4 (5th Cir. 1995) (per curiam) (unpublished); Ippolito v. WNS, Inc., 864 F.2d 440 445, 449–50 (7th Cir.1988) abrogated on other grounds by Safeco Ins. Co. of Amer. v. Burr, 551 U.S. 47 (2007); Houghton v. N.J. Mfrs. Ins. Co., 795 F.2d 1144, 1149 (3d Cir.1986); Heath v. Credit Bureau of Sheridan, Inc., 618 F.2d 693, 395–96 (10th Cir. 1980). The FCRA's term, "consumer report," means "information that is used or expected to be used or collected in connection with a business transaction involving one of the consumer purposes set out in the statute, that is, eligibility for personal credit or insurance, employment purposes, and licensing." Ippolito, 864 F.2d

5

at 451 (quotations omitted) (collecting cases); see also 15 U.S.C. § 1681a(d); Hoke v. Retail Credit Corp., 521 F.2d 1079, 1081 (4th Cir. 1975) (explaining that the Fourth Circuit interprets the FCRA in light of its "broad remedial purpose," but that a consumer report must fit the consumer purpose defined in the statute). To be a consumer report, a credit report must concern personal eligibility for one of the statutory consumer purposes, not a commercial purpose. See, e.g., Boydstun v. U.S. Bank, 729 F. App'x 601, 602 (9th Cir. 2018) (unpublished); Bakker v. McKinnon, 152 F.3d 1007, 1012 (8th Cir. 1998); Ippolito, 864 F.2d at 450–54; Hoke, 521 F.2d at 1081.

Plaintiffs do not have standing to bring an FCRA claim. First, the named company plaintiffs are not consumers, because they are not individuals. Compare 15 U.S.C. § 1681a(c) with id. at § 1681a(b). Second, even assuming Weber is an individual consumer, because Weber's credit report was not a consumer report, he lacks standing to pursue an FCRA claim. Specialized Loan did not use Weber's personal credit report for a consumer purpose. Specialized Loan used Weber's credit report to establish eligibility for ten business loans. Moreover, the facts in this case mirror those in Boydtsun. See 729 F. App'x at 602. In Boydstun, the Ninth Circuit held that the use of a business owner's credit report did not transform a non-consumer application into a consumer application. See id.

Alternatively, there is no private right of action for violating 15 U.S.C. § 1681s-2(a). See, e.g., 15 U.S.C. §§ 1681s-2(c)(1), (d); Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 149 (4th Cir. 2008); Craighead v. Nissan Motor Acceptance Corp., No. 1:10cv981, 2010 WL 5178831, at *4 (E.D. Va. Dec. 14, 2010) (unpublished), aff'd, 425 F. App'x. 197 (4th Cir. 2011) (per curiam) (unpublished); accord Longman v. Wachovia Bank, N.A., 702 F.3d 148, 151 (2d Cir. 2012) (per curiam); Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 615–16 (6th Cir. 2012); Sanders v.

6

Mountain Am. Fed. Credit Union, 689 F.3d 1138, 1147 (10th Cir. 2012); Purcell v. Bank of Am., 659 F.3d 622, 623 (7th Cir. 2011); SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 358 (3d Cir. 2011); Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009). Therefore, the court grants summary judgment to Specialized Loan on plaintiffs' FCRA claim.

## B.

Plaintiffs claim Specialized Loan violated the TCPA when it repeatedly called Weber about the May 2019 loan payment. See Compl. at ¶¶ 122–25. The TCPA makes it unlawful for any person:[1]

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [("ATDS")] or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States . . . .

47 U.S.C. § 227(b)(1)(A); see Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 373 (2012); Cunningham v. Gen. Dynamics Info. Tech., Inc., 888 F.3d 640, 644–45 (4th Cir. 2018); Galbreath v. Time Warner Cable, Inc., No. 7:14-CV-61-D, 2015 WL 9450593, at *2 (E.D.N.C. Dec. 22, 2015) (unpublished). Thus, the statute excludes those calls made with "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(a)(iii).

Prior express consent is an affirmative defense to liability under the TCPA. See, e.g., Snow v. Glob. Credit & Collection Corp., No. 5:13-CV-721-FL, 2014 WL 5781439, at *5 (E.D.N.C. Nov. 6, 2014) (unpublished). The FCC and most courts read the TCPA to provide that "a telephone

---

[1] As used in section 227(c)(5), a person includes corporations and other entities. See 47 U.S.C. § 153(39).

customer who provides her number to another party consents to receive calls or texts from that party." Reardon v. Uber Techs., Inc., 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) (collecting cases); see Galbreath, 2015 WL 9450593, at *2–3; In the Matter of Rules & Regs. Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling, 23 FCC Red. 559, 564 ¶ 9, 2008 WL 65485, at *3 ¶ 9 (Jan. 4, 2008).

Although the TCPA does not contain a revocation of consent provision, and the Fourth Circuit has not expressly addressed the issue, courts have interpreted the common law consent and revocation doctrine to apply to the TCPA. Schweitzer v. Comenity Bank, 866 F.3d 1273, 1276–79 (11th Cir. 2017); Gager v. Dell Fin. Sers., LLC, 727 F.3d 265, 270–72 (3d Cir. 2013); Galbreath, 2015 WL 9450593, at *4–5; cf. Neder v. United States, 527 U.S. 1, 21–22 (1999) ("[W]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms."). The court assumes without deciding that the common law consent and revocation doctrine applies to the TCPA. Nevertheless, where a customer has arguably revoked consent but the record is unclear whether consent was revoked as to all accounts or only partially revoked, then a genuine issue of material fact exists concerning revocation of consent. See Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1256 (11th Cir. 2014) (a genuine issue of material fact concerning revocation of consent cannot be properly resolved on summary judgment); Ammons v. Ally Fin., Inc., 326 F. Supp. 3d 578, 600–01 (M.D. Tenn. 2018) (collecting cases); Zondlo v. Allied Interstate, LLC, 290 F. Supp. 3d 296, 304–05 (M.D. Pa. 2018); Patterson v. Ally Fin., Inc., No. 3:16-cv-1592-J-32, 2018 WL 647438, at *6 (M.D. Fla. Jan. 31, 2018) (unpublished); Jara v. GC Servs. Ltd. P'ship, No. 2:17-cv-04598, 2018 WL 2276635, at *3–4 (C.D. Ca. May 17, 2018) (unpublished);

8

Herrera v. First Nat'l Bank of Omaha, Neb., No. 2:17-cv-01136, 2017 WL 6001718, at *3–4 (C.D. Ca. Dec. 4, 2017) (unpublished).

Weber and all named company plaintiffs are a "person" under the TCPA given that the definition of person specifically lists "corporations" as a person. See 47 U.S.C. § 153(39). And the parties do not dispute that Specialized Loan's telephone notification systems are not ATDS. See SMF at ¶ 49; Resp. SMF at ¶ 49. Therefore, Specialized Loan's only possible violation of the TCPA is for the prerecorded voice messages that Specialized Loan left for Weber.

In response to plaintiff's TCPA claim, Specialized Loan raised the affirmative defense of express prior consent to contact via telephone. Compare [D.E. 73] 21 with [D.E. 19] 13–15; see Fed. R. Civ. Pro. 8(c). Moreover, Weber provided his telephone number to Specialized Loan. See [D.E. 67-5] 2, 7, 12, 17, 22, 27, 31, 36, 41, 45; see also Compl. at ¶ 37. And providing the telephone number to Specialized Loan constitutes express prior consent for the initial calls. However, Weber also argues that he later revoked his consent. See Resp. SMF at ¶ 61(f). Specialized Loan concedes that Weber at least partially revoked consent. But Specialized Loan argues that Weber did not revoke consent on all ten loans and that due to this partial revocation, there is no evidence concerning which loans Weber revoked consent for and whether Specialized Loan contacted Weber about specific loans after consent was revoked. Because genuine issues of material fact exist concerning whether plaintiffs revoked consent totally or partially and what day plaintiffs totally or partially revoked consent, the court denies summary judgment to Specialized Loan on plaintiffs' TCPA claim.

9

## C.

As for Weber's UDTPA claim, Compl. at ¶¶ 126–31, the UDTPA prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1. To the extent that Weber bases his UDTPA claim upon allegations of Specialized Loans reporting "false information . . . on . . . Weber's consumer credit reports," Compl. at ¶ 131, the FCRA preempts the claim. See Ross v. FDIC, 625 F.3d 808, 813 (4th Cir. 2010). The FCRA provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title." 15 U.S.C. § 1681t(b)(1)(F). Section 1681s-2 prescribes detailed duties for those entities who furnish information to credit reporting agencies, including obligations not to report inaccurate information and, upon notice of a dispute, to investigate the dispute and report any corrections to credit reporting agencies. See 15 U.S.C. §§ 1681s-2(a)–(b). Thus, the FCRA preempts Weber's UDTPA claim based upon allegedly furnishing inaccurate information to the credit reporting agencies. See, e.g., 15 U.S.C. § 1681t(b)(1)(F); Ross, 625 F.3d at 813.

A UDTPA claim also can encompass violations of Article 2 of the UDTPA, the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. §§ 75-50 to 75-56. The NCDCA "prohibits debt collectors from engaging in unfair debt collection practices." Ross, 625 F.3d at 817; see N.C. Gen. Stat. §§ 75-50 to 75-56. To state a claim under the NCDCA, a plaintiff must plausibly allege three threshold requirements: first, the plaintiff must be a consumer; second, the claim must involve a debt; and third, the defendant must be a debt collector. See, e.g., Davis Lake Cmty. Ass'n v. Feldman, 138 N.C. App. 292, 295–96, 530 S.E.2d 865, 868 (2000). As for the first requirement, the NCDCA defines a consumer as "any natural person who has incurred a debt or alleged debt for

10

personal, family, household or agricultural purposes." N.C. Gen. Stat. § 75-50(1). Moreover, although Weber is a natural person, he fails the first threshold requirement because he incurred the debt for commercial, not consumer, purposes such as personal, family, household, or agricultural purposes, as listed in the statute. See Wells Fargo Bank, N.A. v. Corneal, 238 N.C. App. 192, 197, 767 S.E.2d 374, 378 (2014) (holding that a plaintiff must show he incurred debt for one of the statutory consumer purposes: personal, family, household, or agricultural purposes, to be a consumer under the NCDCA); cf. Mullins v. Monarch Recovery Mgmt., Inc., No. 5:21-CV-00120, 2022 WL 21259123, at *3–4 (W.D.N.C. May 26, 2022) (unpublished); Reid v. Ayers, 138 N.C. App. 261, 264–65, 531 S.E.2d 231, 234 (2000); Davis Lake, 138 N.C. App. at 295, 530 S.E.2d at 868. Accordingly, the court grants summary judgment to Specialized Loan on Weber's UDTPA claim.

## D.

Plaintiffs argue that Specialized Loan violated the MDCSA. The MDCSA applies to home loans, defined as:

> A loan secured by real property located in this State used, or intended to be used, by an individual borrower or individual borrowers in this State as a dwelling, regardless of whether the loan is used to purchase the property or refinance the prior purchase of the property or whether the proceeds of the loan are used for personal, family, or business purposes.

N.C. Gen. Stat. § 45-90(1). "In interpreting a statute, 'a court should always turn first to one, cardinal canon [of construction] before all others': the plain meaning rule." Ayes v. U.S. Dep't of Veterans Affairs, 473 F.3d 104, 108 (4th Cir. 2006) (alteration in original) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992)).

Plaintiffs' loans do not qualify under the MDCSA, because they are not home loans. The statute's plain meaning is clear. Plaintiffs used the secured property as business investments not

11

dwellings. Although Weber uses some of the secured property as rental property, the MDCSA requires that the individual borrower use the property as a dwelling, not that tenants or others use the property as a dwelling. See N.C. Gen. Stat. §§ 45-90 to 45-99. Thus, plaintiffs do not have standing to bring a claim under the MDCSA. Accordingly, the court grants summary judgment to Specialized Loan on plaintiffs' MDCSA claim.

### E.

Finally, Weber claims Specialized Loan breached the loan contracts. See Compl. at ¶¶ 139–47. Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000); see Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260, 276, 827 S.E.2d 458, 472 (2019) (per curiam); Cantrell v. Wondhill Enters., Inc., 273 N.C. 490, 497, 160 S.E.2d 476, 481 (1968); Montessori Children's House of Durham v. Blizzard, 244 N.C. App. 633, 636, 781 S.E.2d 511, 514 (2016); McLamb v. T.P., Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005) (citation omitted), disc. review denied, 360 N.C. 290, 627 S.E.2d 621 (2006).

The loan contracts between Weber and Specialized Loan are valid contracts. See Compl. at ¶¶ 22, 140; SMF at ¶¶ 3–10, 18; Resp. SMF at ¶¶ 3–10, 18. A genuine issue of material fact exists concerning whether plaintiffs' lump-sum check payments, which Specialized Loan accepted four times before rejecting the May check, are contractually "proper" payments. Thus, the court denies summary judgment to Specialized Loan on plaintiffs' breach of contract claim.

### III.

In sum, the court DENIES defendant's motion for summary judgment as to the TCPA claim and breach of contract claim and GRANTS defendant's motion for summary judgment on all other

claims [D.E. 55]. The parties shall engage in a court-hosted settlement conference with United States Magistrate Judge Gates.

SO ORDERED. This 3 1 day of August, 2022.

James C. Dever

JAMES C. DEVER III
United States District Judge